McCRORY v. COMMISSIONER OF INTERNAL REVENUE.

COMMISSIONER OF INTERNAL REVENUE v. McCRORY.

No. 6991.

Circuit Court of Appeals, Fifth Circuit.

March 19, 1934.

Petitions for Review of Decisions of United States Board of Tax Appeals, District of Texas.

Petitions by Luke W. McCrory, trustee of the estate of Luke F. Wilson, and the Commissioner of Internal Revenue, to review a decision of the United States Board of Tax Appeals.

Harry C. Weeks and A. H. Britain, both of Wichita Falls, Tex., for Luke W. McCrory.

Frank J. Wideman, Asst. Atty. Gen., Helen R. Carloss and Sewall Key, Sp. Assts. to Atty. Gen., and E. Barrett Prettyman, Gen. Counsel, Bureau of Internal Revenue, Frederick R. Shearer and Frank B. Schlosser, Sp. Attys., Bureau of Internal Revenue, all of Washington, D. C., for the Commissioner.

Before BRYAN, SIBLEY, and WALKER, Circuit Judges.

SIBLEY, Circuit Judge.

The main question on these cross-petitions is whether the income of a trust was wholly or partially distributable to the beneficiaries during the tax year 1924 so as to entitle the trustee to a deduction from his taxable income. It is also questioned whether there was a trust rather than an irrevocable agency. Luke F. Wilson and Nellie M. Wilson were a man and wife of advanced years who had no descendants and desired to benefit their twenty-seven nieces and nephews, some of whom were also old and all more or less needy. On June 10, 1924, they executed the complicated instrument whose construction is disputed. It recites the receipt of $10 and other good and valuable considerations, and that the grantors "have granted, sold and conveyed and by these presents do grant, sell and convey to Luke W. McCrory as trustee for all of the persons and beneficiaries hereinafter named, and upon the terms, conditions, considerations, uses and trusts hereinafter set forth" extensive real and personal properties, including a number of oil wells. It concludes: "To have and to hold the above described premises and property, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said Luke W. McCrory, trustee, his successors or assigns, forever." A substitute trustee was named in case of McCrory's death, resignation, or inability to act. The general duties imposed were to manage, sell, and reduce to cash the properties and to make annual distribution to the named beneficiaries, winding the whole up within ten years. The trustee was to be free from any interference or molestation by the beneficiaries except for fraud, embezzlement, or willful breach of trust. It is too clear for argument that this is a typical active trust; the title to the property being irrevocably conveyed to a trustee with specified duties and powers for the benefit of designated persons. Chicago, M. & St. P. R. Co. v. Des Moines, etc., R. Co., 254 U. S. 196, 41 S. Ct. 81, 65 L. Ed. 219. It is not an agency. It is not like the instrument in Trudy T. Munger v. Com'r, 16 B. T. A. 168, or Stoddard v. Eaton (D. C.) 22 F.(2d) 184, in which a mere agency was held created to manage property; the grantor keeping substantial control. McCrory is called a trustee throughout the instrument, and by every test was constituted such. He properly made a fiduciary return as trustee for the year 1924.

His return shows that during 1924 he received income of about $628,000 for distribution under his trust. The trust instrument under the heading "Burdens and Obligations," paragraphs (a), (b), (c), and (d), required that from the income and revenues and from the sale of any portion of the trust property he should pay every expense of the trust, including a salary of $6,000 to himself, should pay all ad valorem and special taxes and liens on the trust property, all gift, estate, or inheritance taxes due by the grantors to the state or the United States, and all the income taxes of the grantors for the year 1924. It then provided: "(e) All other income, after setting aside a sufficient amount of the revenues and income and proceeds of the sale of all or any part of the trust estate which may be necessary to pay off and satisfy all of the expenses and taxes set out in paragraphs (a) (b) (c) and (d) next above, together with a reasonable surplus necessary or proper in the performance of the duties hereunder, shall be distributed to the beneficiaries hereunder each and every year hereafter on or before Dec. 31st of each year." On December 31, 1924, although the grantors' gift and income taxes and his own income taxes had not been ascertained or paid, the trustee, understanding that a distribution was due, closed his books, setting up on them a final item: "Undivided profits $550,290.40," and offsetting it with an item, "Account of twenty-seven beneficiaries —share and share alike, $550,290.40." Instead of distributing that sum to them, he mailed each a letter giving an account of his administration, and stating the amount coming to each as information to be used by them in their several income tax returns, but concluding thus: "The earnings since June 1st, 1924, shown on the statement are being held by your trustee to pay the gift tax and income tax of Aunt Nell Wilson and Uncle Luke Wilson as provided in the trust deed. The income under the trust deed has been credited to the twenty-seven beneficiaries on our books in this office. Payment of the taxes will be made and this account will be charged each one with one-twenty-seventh of the amount thus paid. There will be no distribution whatever from your trustee of any funds until settlement of income and gift tax has been completed with the federal Government. This settlement may require a year, more or less, and is one which your trustee cannot hasten, as it is strictly a federal Government transaction and many delays may be anticipated. In the meantime, all revenue will be accumulating for the twenty-seven heirs." The amount of the gift and income taxes had not then been approximated, but the returns

made in March, 1925, showed $122,243.68 due as gift tax and approximately $100,000 as income tax. Donors' taxes to the state of Missouri, $6,257.96, were also later ascertained and paid. As finally settled, the total payments required of the trustee for all the items amounted to $252,332.02. On these facts the Board of Tax Appeals held that the trustee should on December 31, 1924, have set aside $252,332.02 to meet these demands and should have distributed the remainder to the beneficiaries, and in consequence that he is not entitled to deduct this reserve as distributable, but is entitled to deduct the remainder although not actually distributed; it being properly taxable to the several beneficiaries rather than to the trustee.

The Revenue Act of 1924, § 219 (a), 26 USCA § 960 note, provides that the income tax shall apply to the income of estates or of any kind of property held in trust, and subsection (b) requires the fiduciary in general to return and pay the tax as an individual would, but that he may have additional deduction of certain amounts distributed or distributable to the beneficiaries, which are correspondingly to be charged as income in the returns of the beneficiaries. The present dispute is over these additional deductions. Subsection (b) (2), 26 USCA § 960 note, declares, "There shall be allowed as an additional deduction * * * the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries," adding that the amount is to be included in the income of the beneficiaries whether actually distributed to them or not. Subsection (b) (3), 26 USCA § 960 note, provides: "And in the case of income which, in the discretion of the fiduciary, may be either distributed to the beneficiary or accumulated, there shall be allowed * * * the amount of the income of the estate or trust for its taxable year which is properly paid or credited during such year to any legatee, heir, or beneficiary." The taxpayer contends that the entire $550,290.40 was to be currently distributed to the beneficiaries, there being ample salable corpus and prospective income to care for the unpaid taxes as they should be ascertained and become due, and that the whole amount should be deducted from the trustee's return and distributed among the returns of the beneficiaries as proposed in his letter to them, or else that the distribution lay in his discretion and that he had during the year properly credited the whole amount to the beneficiaries, with a like

result. The Commissioner contends that none of it was to be distributed during 1924, and none was sufficiently credited if distribution was discretionary, and hence no deduction should have been allowed.

Whether income "is to be distributed currently" or "in the discretion of the fiduciary may be either distributed to the beneficiary or accumulated" depends on the terms of the trust instrument. Section 219 in several places expressly refers to the terms of the will or deed creating the trust as controlling in the matters dealt with. Similar provisions of the Revenue Act of 1921 were construed in Freuler v. Helvering, Commissioner, 54 S. Ct. 308, 78 L. Ed. ——, and it was said that the present right of the beneficiary to receive the income must be looked to rather than his actual receipt of it, and that distributable income is not that which the parties reasonably regarded as distributable, but that the plain import of the words used must be followed. The test here is not what this trustee thought or did, but what his trust empowered or required him to do. What instruction would a court of equity, if appealed to on December 31, 1924, have given him? We think the words of distribution quoted above are mandatory. The trustee is positively directed first to set aside from revenues and proceeds of sale a sufficient amount to pay and satisfy stated claims, with a reasonable surplus necessary for the performance of the trust duties, and then to distribute to the beneficiaries "all other income * * * each and every year hereafter on or before Dec. 31st of each year." There is no discretion given to distribute or accumulate the income within the meaning of section 219 (b) (3), 26 USCA § 960 note. The right of the beneficiaries to a distribution does not depend on the will or discretion of the trustee, but on there being enough income to enable him to make a distribution. The right, however, is conditioned on his first setting aside a sufficient amount to discharge the burdens of the trust. But it is not necessary that they should have been discharged nor even precisely ascertained. The trustee cannot escape a distribution by refusing or neglecting to ascertain them. If they cannot be exactly estimated, his duty is plain to set aside what is reasonably sufficient to cover them and to distribute the balance. He could not know exactly what he would be required to pay for gift and income taxes, but all the facts which he used to make the returns in March might with diligence have been made available on December 31st. The estimating of the amount to be set aside be-

fore making a distribution involved judg-ment, but not discretion to make or not make a distribution. The tax authority will exercise the judgment which the trustee ought to have exercised, and will determine taxes accordingly. The determination of the Board that the trustee should have set aside $252,-332.02 and distributed the remainder is not reversible.

■ The suggestion is made that the words, "each and every year hereafter on or before Dec. 31st of each year," excluded the year 1924 in which the deed was executed, and, since the gift and income taxes were not due and payable until March, 1925, this is the reasonable construction. Had payment of these taxes been required, the argument would be strong, but the requirement is that a sufficient amount should be set aside to pay, which rather indicates that the grantor realized that payment could not be made of some of the items by December 31st. The main purpose of the trust is to make the net income, and the corpus itself within ten years, available to the beneficiaries annually. "December 31st of each year" includes the year 1924, and "hereafter" may mean only after the date of the instrument. If the construction were doubtful, we have the testimony of the draughtsman that he was instructed to provide for a distribution in 1924 and each year thereafter.

■ It is argued that the burdens, to discharge which funds were to be set aside, were obligations of the grantors who thus became beneficiaries of the trust, so that the sum set aside to discharge the burdens was really a part of the distribution to beneficiaries. We do not think the statute or the deed will bear this construction. The statute speaks of the fiduciary and the beneficiaries, and by the latter means only the ultimate recipients of the trust bounty according to the terms of the trust instrument. The deed here names, describes and even numbers the twenty-seven beneficiaries, and the grantors are not among them. The liens and taxes which are to be paid are, as the deed states, burdens or charges upon the trust, subtractions from it rather than a part of its benefits. Payment of them is not distribution to the beneficiaries any more than when an executor pays the debts of the estate in his hands.

■ Whether the payments or any of them are deductible on any other account than as a distribution to beneficiaries we need not inquire, because, if so deductible, the deductions must be taken in the year in which they

are paid and no part of the sum here in dispute was paid out in 1924. Similarly the contention that the trustee might have sold capital assets to pay the burdens on the trust and might have distributed the entire income to the beneficiaries in 1924 cannot be sustained because he did no such thing.

We find no error of law in the proceedings of the Board, and the petitions to review them are denied.